**NOT FOR PUBLICATION**

THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BAYER PHARMA AG, BAYER INTELLECTUAL PROPERTY GMBH, and BAYER HEALTHCARE PHARMACEUTICALS,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>WATSON LABORATORIES, INC., ACTAVIS, INC., and ACTAVIS PHARMA, INC.<br><br>　　　　Defendants. | Civil Action No. 14-1804 (JLL) (JAD) |
| BAYER PHARMA AG, BAYER INTELLECTUAL PROPERTY GMBH, and BAYER HEALTHCARE PHARMACEUTICALS,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>PAR PHARMACEUTICALS, INC., PAR PHARMACEUTICAL COMPANIES, INC.<br><br>　　　　Defendants. | Civil Action No. 14-2065 (JLL) (JAD)<br><br>OPINON ON DEFENDANTS' MOTIONS TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a) |

JOSEPH A. DICKSON, U.S.M.J.

　　This matter comes before the Court upon identical motions filed by Defendants Watson Laboratories, Inc., Actavis, Inc. and Actavis Pharma, Inc. (in Civil Action No. 14-1804) and by Defendants Par Pharmaceutical, Inc. and Par Pharmaceutical Companies, Inc. (in Civil Action No. 14-2065) to transfer these matters to the United States District Court for the District of Delaware pursuant to 28 U.S.C. § 1404(a) (the "Motions to Transfer"). (ECF No. 10 in Civil

Action No. 14-1084 and ECF No. 9 in Civil Action No. 14-2065). The Hon. Jose L. Linares, U.S.D.J. referred Defendants' motions to this Court for resolution. In accordance with Rule 78 of the Federal Rules of Civil Procedure, the Court did not hear oral argument on these applications. As set forth in detail below, while most of the factors relevant to the Court's transfer analysis are either neutral or of relatively minor weight, the public interest factor concerning certain "practical considerations" that might make trial more expeditious or inexpensive weighs overwhelmingly in favor of transfer. Upon consideration of the parties' submissions, therefore, Defendants' Motions to Transfer are **GRANTED**. These cases shall both be transferred to the United States District Court for the District of Delaware.

**I.      BACKGROUND AND PROCEDURAL HISTORY**

The background facts and procedural history relevant to Defendants' motions do not appear to be in dispute. The information below is gleaned from the parties' pleadings, as well as the documents submitted in connection with the pending motions.

    **a.      The Compound Patent Litigation Pending in Delaware**

In or about November of 1997, Plaintiffs began the process of applying for patents on vardenafil, a chemical compound developed for the treatment of erectile dysfunction. (Pl., Br., ECF No. 20, at 3).[1] Plaintiffs subsequently obtained U.S. Patent No. 6,362,178 on March 26, 2002, ('178 Patent, Decl. of Thomas S. Fletcher, Ex. 3, ECF No. 20-3), and U.S. Patent No. 7,696,206 on April 13, 2010, ('206 Patent, Decl. of Thomas S. Fletcher, Ex. 4, ECF No. 20-4), both of which concerned the chemical compound vardenafil (collectively, the '178 Patent and the '206 Patent are referred to as the "Compound Patents").

---

[1] While Defendants filed motions in both Civil Action Nos. 14-1804 and 14-2065, the briefing and supporting certifications are identical in both matters. For the sake of clarity, and unless otherwise specified, the Court's citations refer to the documents filed in Civil Action No. 14-1804.

Defendant Watson Laboratories, Inc. submitted Abbreviated New Drug Application ("ANDA") No. 203689 to the United States Food and Drug Administration ("FDA"). (See Compl. in Bayer Pharma AG et al. v. Watson Labs, Inc., No. 12-517 (GMS), Decl. of Brian J. Robinson (Corrected) ("Robinson Decl."), Ex. A, Doc. 13 at 6). That ANDA covered Watson Laboratories, Inc.'s "Vardenafil Hydrochloride Orally Disintegrating Tablets", a generic version of Plaintiffs' STAXYN© product. (Id.). On April 25, 2012, Plaintiffs in this case filed a complaint in the United States District Court for the District of Delaware, alleging that Watson Laboratories, Inc. infringed upon the '178 and '206 Patents by submitting the ANDA and that Watsons Laboratories, Inc. and its affiliates, Watson Pharmaceuticals, Inc and Watson Pharma, Inc. (now known as Actavis, Inc. and Actavis Pharma, Inc., respectively), would continue to do so by marketing and distributing their proposed, generic vardenafil product. (Id. at 9-16) (the "Delaware Watson Action").

While the Delaware Watson Action was pending, Defendant Par Pharmaceutical, Inc. prepared and submitted ANDA No. 204786 for its own generic vardenafil product. (See Compl. in Bayer Pharma AG et al. v. Par Pharm., Inc., No. 13-845 (GMS), Robison Decl., Ex. G, at 82). On May 14, 2013, Plaintiffs filed a complaint against Par Pharmaceutical, Inc. and Par Pharmaceutical Companies, Inc., alleging that those defendants had infringed upon the '178 and '206 Patents by submitting the ANDA and would continue to do so by selling their generic version of STAXYN©. (Id. at 84-91) (the "Delaware Par Action").[2]

    **b.**    <u>**The Formulation Patent Litigations Before This Court**</u>

On December 23, 2014, Plaintiffs received U.S. Patent No. 8,613950, which pertained to the specific formulation of STAXYN© as an orally disintegrating vardenafil tablet (i.e., the

---

[2] The Delaware Watson Action and Delaware Par Action are collectively referred to as the "Delaware Actions."

chemical mechanism through which vardenafil is released into the system as opposed to the composition of vardenafil itself) ('950 Patent, Decl. of Thomas S. Fletcher, Ex. 2, ECF No. 20-2). By letter dated, February 6, 2014, Defendant Watson Laboratories, Inc. once again advised Plaintiffs of ANDA No. 203689, this time in connection with the '950 Patent. (Compl., ECF No. 1, ¶ 28). Defendant Par Pharmaceutical, Inc. did the same with regard to its own ANDA, No. 204786, by letter dated March 17, 2014. (Compl. in Civil Action No. 14-2065, ¶ 23). Plaintiffs then filed one suit in this District against the Watson/Actavis defendants (Civil Action No. 14-1804, filed on March 21, 2014) and another against the Par defendants, (Civil Action No. 14-2065, filed on April 2, 2014), alleging that those defendants' ANDAs violated the '950 Patent, and that their efforts to market and sell generic versions of STAXYN© would continue to do so in the future. (See generally Compl., ECF No. 1; Compl. in Civil Action No. 14-2065).

Therefore, both the Delaware Actions and the Formulation Patent litigations pending in this District involve the same parties, the same products and the same ANDAs.

    c.    **The Relevant Procedural Posture of The Various Litigations**

Chief Judge Gregory M. Sleet, U.S.D.J., who is presiding over both of the Delaware Actions, had previously scheduled a trial in the Delaware Watson Action for March 2014. (Docket Sheet for Delaware Watson Action, Decl. of Thomas S. Fletcher, Ex. 10, ECF No. 20-5, at 56). Following a conference call conducted on January 17, 2014, Judge Sleet entered an Order consolidating the Delaware Watson Action and the Delaware Par Action for trial. (Id.). Judge Sleet indicated that the Delaware Actions would be tried together in April 2015, (Tr. of Jan. 17, 2014 Tel. Conf., Decl. of Thomas S. Fletcher, Ex. 1, ECF No. 20-2, at 13:22-14:6, 20:4-10), and that, if Plaintiffs commenced litigation concerning the '950 Patent in the District of Delaware, he would "consolidate that action with the others and try them in April of 2015." (Id. at 20:14-15).

Judge Sleet made clear, however, that he was not requiring Plaintiffs to litigate the '950 Patent in Delaware. (Id. at 14:4-8).

As noted above, Plaintiffs elected to file complaints alleging infringement of the '950 Patent in the District of New Jersey. Defendants in both actions then filed motions to transfer these matters to the District of Delaware.

## II. LEGAL ANALYSIS

### a. The Legal Standards Applicable on a Motion to Transfer Under § 1404(a)

Defendants ask the Court to transfer these actions to the United States District Court for the District of Delaware pursuant to 28 U.S.C. § 1404(a). That statute provides, in pertinent part, that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of § 1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (internal quotations and citations omitted). The decision of whether to transfer a case is committed to the trial court's sound discretion. Cadapult Graphic Sys. v. Tektronix, Inc., 98 F. Supp. 2d 560, 564 (D.N.J. 2000); Days Inns Worldwide, Inc. v. RAM Lodging, LLC, No. 09-2275, 2010 WL 1540926, at *2 (D.N.J. April 14, 2010).

In determining whether to transfer a matter pursuant to § 1404(a), and based on the plain language of that statute, a court must consider: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. Rappoport v. Steven Spielberg, Inc., 16 F. Supp. 2d 481, 497 (D.N.J. 1998). In addition to these statutory factors, the United

States Court of Appeals for the Third Circuit has established a list of public and private interests that a court should examine when deciding whether to transfer an action::

> The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
>
> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

Jumara v. State Farm Ins. Co., 55 F.3d 873, 879-80 (3d Cir. 1995)).

The Court must, therefore, engage in a two part analysis to determine whether any motion to transfer venue should be granted. As a threshold matter, the Court must decide whether the transferee district has proper jurisdiction and venue, such that the case could have been brought in the transferee district in the first instance. Lawrence v. Xerox Corp., 56 F. Supp. 2d 442, 450 (D.N.J. 1999). The Court must then conduct an "individualized, case-by-case consideration of convenience and fairness" regarding which forum is most appropriate to consider the case. Id. "There is no rigid rule governing a court's determination; 'each case turns on its facts.'" Id. (citing Lacey v. Cessna Aircraft Co., 862 F.2d 38, 43 (3d Cir. 1988) (internal citations omitted)); Rappoport, 16 F. Supp 2d at 498 ("Transfer analysis under Section 1404 is a flexible and individualized analysis and must be made on the unique facts presented in each case.") (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 249-250 (1981)). The Court is also mindful of the

Third Circuit's admonition against any court considering the merits of a case during the pendency of a transfer application. McDonnell Douglas Corp. v. Polin, 429 F.2d 30 (3d Cir. 1970) ("Judicial economy requires that another district court should not burden itself with the merits of the action until it is decided that a transfer should be effected and such consideration additionally requires that the court which ultimately decides the merits of the action should also decide the various questions which arise during the pendency of the suit instead of considering it in two courts.")

### b. Plaintiffs Could Have Brought These Actions in Delaware

28 U.S.C. § 1404(a) provides, in pertinent part, that "a district court may transfer any civil action to any other district or division where it might have been brought." As a threshold issue, therefore, the Court must determine whether venue for these matters would be appropriate in the United States District Court for the District of Delaware. If venue is not appropriate in that District, the Court may not effectuate the requested transfers pursuant to 28 U.S.C. § 1404(a). While Defendants addressed the venue issue only in passing, (Def. Br., ECF No. 10-1, at 14) and Plaintiffs ignored it entirely, (see generally Pl. Br., ECF No. 20), the Court must analyze this fundamental point to determine if transfer would be permissible.

28 U.S.C. § 1391 sets forth the standards for venue in the United States District Court. See 28 U.S.C. § 1391(a) ("Except as otherwise provided by law . . . this section shall govern the venue of all civil actions brought in district courts of the United States"). In turn, Section 1391(b) provides, in pertinent part, that "[a] civil action may be brought in . . . a judicial district

in which any defendant resides, if all defendants are residents of the State in which the district is located."[3]

Here, Plaintiffs have alleged, and Defendants do not contest, that Defendants Par Pharmaceutical, Inc. and Par Pharmaceutical Companies, Inc. are incorporated under Delaware law. (Civil Action No. 14-2065, ECF No. 1, ¶¶ 5-6; ECF No. 30, ¶¶ 5-6). The parties' pleadings similarly establish that Defendant Actavis Pharma, Inc. is a Delaware entity. (Civil Action No. 14-1804, ECF No. 1, ¶ 7; ECF No. 15, ¶ 7). Each of those entities is therefore subject to personal jurisdiction in Delaware and, thus, "resides" there for venue purposes in accordance with 28 U.S.C. § 1391(c). The remaining defendants, Watson Laboratories, Inc. and Actavis, Inc. have consented to personal jurisdiction in the District of Delaware with regard to this matter, (Def. Br., ECF No. 10-1, at 14), so those entities also "reside" in Delaware pursuant to 28 U.S.C. § 1391(c). NCR Credit Corp. v. Ye Seekers Horizon, 17 F. Supp. 2d 317, 320 (D.N.J. 1998) (where defendant consented to personal jurisdiction in New Jersey, that defendant was found to "reside" in New Jersey for venue purposes in accordance with 28 U.S.C. § 1391(c)). As all Defendants reside in the District of Delaware, venue would be appropriate in that District for both Civil Action No 14-1804 and Civil Action No 2065. See 28 U.S.C. 1391(b)(1). Based on the foregoing, the Court finds that Plaintiffs could have commenced these actions in the District of Delaware, and that the Court may therefore transfer both cases to that District if such transfers would otherwise be appropriate.

---

[3] 28 U.S.C. § 1391(c) provides in pertinent part that, for venue purposes, an entity "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."

### c. Analysis of the *Jumara* Factors

Having determined that venue for these cases would be appropriate in the District of Delaware, the Court must now analyze the private and public interest factors relevant to Defendants' transfer application. As discussed above, the United States Court of Appeals for the Third Circuit enumerated those factors in Jumara, 55 F.3d at 879-80. The Court also notes that Defendants retain the burden of establishing that transfer is appropriate. In re Amendt, 169 F. App'x 93, 96 (3d Cir. 2006).

#### i. Private Interest Factors

With regard to the "private interest" factors relevant to a 1404(a) analysis, the Third Circuit has directed courts to consider "plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses -- but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." Jumara, 55 F.3d at 879-80. The Court will address each of these factors in turn.

#### A. The Parties' Choice of Forum

Within the Third Circuit, a plaintiff's choice of forum is a "paramount concern" in deciding a motion to transfer venue. Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970). When a plaintiff chooses its home forum, that choice is "entitled to greater deference." Sandvik, Inc. v. Cont'l Ins. Co., 724 F. Supp. 303, 307 (D.N.J. 1989). Here, Plaintiff Bayer Healthcare Pharmaceuticals, Inc. resides in in both New Jersey and Delaware and has chosen one

of its home fora for this litigation.[4] The Court acknowledges, however, that "when the central facts of a lawsuit occur outside of the chosen forum, plaintiff's choice of forum is accorded less weight." NCR Credit Corp., 17 F. Supp. 2d at 321; Melone v. Boeing Co., No. 07-cv-1102 (DMC), 2008 U.S. Dist. LEXIS 25367, *5-6 (D.N.J. Mar. 28, 2008) ("Deference to the plaintiff's selected forum is also diminished 'where the central facts of a lawsuit occur outside the chosen forum' or the plaintiff's choice of forum 'has little connection with the operative facts of the lawsuit.'") (quoting In re Consolidated Parlodel Litig., 22 F. Supp. 2d 320, 324 (D.N.J. 1998)). As discussed in Section II(c)(i)(B), below, the parties have not placed sufficient information in the record to allow the Court to determine where the "central facts" of this lawsuit occurred. The Court will not, therefore, reduce the deference afforded to Plaintiffs' choice of forum. Though it does not change the analysis in this case, this Court suggests that, as a practical matter, the parties' forum preferences are less important in a typical Hatch-Waxman litigation, where the patent infringement at issue flows, as a matter of statute, from a defendant's submission of an ANDA to the FDA (rather than any transactions or other activities in the forum).

While the Court acknowledges that Defendants would prefer to litigate in the District of Delaware, Defendants are the moving parties here, and thus bear the burden of persuasion regarding their motions to transfer. Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756 (3d Cir.1973). To overcome the presumption in favor of Plaintiffs' choice of forum, Defendants must show that the balance of conveniences weighs "strongly in favor" of transfer to a more convenient forum. Shutte, 431 F.2d at 25. As set forth in connection with the Court's discussion of the other Jumara factors, the Court finds that Defendants have carried that burden.

---

[4] The Court notes that the proposed transferee forum, the District of Delaware, is also Plaintiff Bayer Healthcare Pharmaceuticals, Inc.'s home forum.

### B.     Where the Causes of Action Arose

Neither Plaintiffs nor Defendants have provided the Court with sufficient guidance as to where the causes of action at issue in these matters "arose." "This factor turns on which forum contains the center of gravity of the dispute, events, and transactions." Depuy Synthes Sales, Inc. v. Gill, No. 13-4474 (JAP), 2013 U.S. Dist. LEXIS 154825, *21 (D.N.J. Oct. 29, 2013) (citing Park Inn Int'l, L.L.C. v. Mody Enters., 105 F. Supp. 2d 370, 377-78 (D.N.J. 2000); accord Master Cutlery, Inc. v. Panther Trading Co., No. 12-4493 (JLL), 2012 U.S. Dist. LEXIS 178639, *9-10 (D.N.J. Dec. 14, 2012) ("'The locus of the alleged culpable conduct determines the place where the claim arose.' Intellectual property infringement occurs, among other places, where any allegedly infringing articles are sold") (internal citations omitted).

Here, Plaintiffs contend that Defendants infringed upon the '950 patent by submitting their respective ANDAs, and that, if those ANDAs are approved, Defendants will continue to infringe upon that patent by marketing generic versions of STAXYN®. (Compl. in Civil Action No. 14-1804, ¶¶ 36-46; Compl. in Civil Action No. 14-2065, ¶¶ 31-41). The only alleged instances of infringement that have allegedly occurred to date, therefore, are Defendants' respective ANDA submissions.[5] Neither party has provided the Court with a definitive rule as to where the "center of gravity" for such infringement might be.

Defendants argue, without citation, that "there are no meaningful connections between New Jersey and the events that gave rise to these actions. All of the design, development and testing of the accused products took place in India." (Pl. Rep., ECF No. 26, at 9; Pl. Br., ECF No. 10-1, at 7). Defendants do not, however, cite any authority for the proposition that the

---

[5] The Court notes that, pursuant to 35 U.S.C. § 271(e)(2)(A), "[i]t shall be an act of infringement to submit [an ANDA application] . . . for a drug claimed in a patent or the use of which is claimed in a patent."

11

"center of gravity" for Plaintiffs' infringement claims is the place where Defendants developed or tested its generic products. While Plaintiffs contend that "courts have looked to where the ANDA was prepared and submitted as relevant considerations" in this analysis, (Pl. Br., ECF No. 20, at 13), they do not establish the locations from which Defendants prepared or sent the ANDAs at issue.[6] The parties agree that Defendants filed their ANDAs with the FDA, and, more specifically, it appears that those ANDAs were directed to the FDA's Office of Generic Drugs in Rockville, Maryland. See U.S. Food and Drug Administration, Abbreviated New Drug Application (ANDA): Generics, http://www.fda.gov/Drugs/DevelopmentApprovalProcess/HowDrugsareDevelopedandApproved/ApprovalApplications/AbbreviatedNewDrugApplicationANDAGenerics/default.htm (last visited May 27, 2014). Therefore, though Plaintiffs correctly state that nothing in the record demonstrates that Defendants' ANDAs were prepared in or submitted from Delaware, (id. at 1), it appears that the same may be said of New Jersey. As "[n]either of these competing arguments can be said to definitely establish where [Plaintiff's claims] arose . . . the Court finds this factor to be neutral to the transfer analysis." Ki-The Kim v. BMW of N. Am., LLC, No. 12-CV-02917 (CCC), 2013 U.S. Dist. LEXIS 23950, *11 (D.N.J. Feb. 19, 2013).

### C.   The Relative Convenience of the Parties

This factor requires the Court to examine "the convenience of the parties as indicated by their relative physical and financial condition." Jumara, 55 F.3d at 879. Neither Plaintiffs nor Defendants have addressed this factor squarely by comparing their relative financial positions. Instead, Defendants argue that Plaintiff Bayer Healthcare Pharmaceuticals, Inc. "selected

---

[6] This evidentiary gap is significant. For instance, while several Defendants maintain their headquarters in New Jersey, Plaintiffs allege that Defendant Watson Laboratories, Inc., which, Plaintiffs contend, submitted the ANDA at issue in Civil Action No. 14-1804, (Compl., ECF No. 1, ¶ 1), actually maintains its headquarters in California. (Id. ¶ 6).

*Delaware* as its forum of choice for *all seven of its prior-filed suits* asserting its vardenafil patents", (Def Br., ECF No. 10-1, at 13) (emphases in original), thereby suggesting that Delaware would be a convenient forum for Plaintiffs to litigate these matters as well.[7] (Id.). Plaintiffs contend that, because Defendants each have their headquarters in New Jersey,[8] "the convenience of the parties thus cannot point strongly in favor of Delaware." (Pl. Br., ECF No. 20, at 13). While the Court believes it is self-evident that a single trial in one state would be more convenient to all parties than multiple trials in two states, nothing in the record suggests that either New Jersey or Delaware would be more convenient for the parties based on their "relative physical and financial condition." The Court therefore finds that this factor is neutral to the transfer analysis.

### D.      The Convenience of the Witnesses and Location of Documents

In connection with considerations of witness convenience, Plaintiffs contend that they "<u>may</u> wish to call third-party fact witnesses to testify about [relevant] prior art issues", (id. at 14) (emphasis added), and that, given their location in the "New York City area", those witnesses "can be compelled to testify at trial in New Jersey, but not in Delaware." (Id. at 15). Defendants also represent that they "<u>may</u> wish to call non-party inventors of a prior art reference relating to [a technology that] is one of the main ingredients in the examples of the '950 patent" and that those "inventors" live in Delaware and are not subject to subpoena power in New Jersey. (Def. Rep., ECF No. 26 at 11-12, n.8) (emphasis added). Both parties therefore argue that they <u>might</u>

---

[7] At least one Court in this District has previously found that a party's repeated litigation in a foreign district is relevant to the convenience analysis, as it "suggests that litigating in [that district] is not a hardship to Plaintiff and that Plaintiff is already familiar with the [district's] local procedures." Telebrands Corp. v. martFIVE, LLC, No. 13-3374, 2013 U.S. Dist. LEXIS 124420, *24 (D.N.J. Aug. 30, 2013).

[8] Plaintiffs make this statement despite alleging that Defendant Watson Laboratories, Inc. has its principal place of business in California. (Civil Action No. 14-1804, ECF No. 1, ¶ 6).

13

call certain non-party witnesses who <u>might</u> also be unwilling to travel.[9] Defendants also contend that the Court should consider the inconvenience of having party witnesses attend multiple trials. (Def. Br., ECF No. 10-1, at 12; Def. Rep. Br., ECF No. 26, at 11). Nothing in the record, however, confirms that any witnesses would be unable or unwilling to travel to either this District or the District of Delaware, which is the sole relevant consideration for this factor under <u>Jumara</u>. 55 F.3d at 879. The Court therefore finds that this factor is neutral to the transfer analysis.

Similarly, nothing in the record demonstrates that the relevant documents would be unavailable in either District. <u>Id.</u> Indeed, Plaintiffs suggest, and this Court agrees, that those documents "could be produced in whichever forum has the case." (Pl. Br., ECF No. 20, at 22). This factor, therefore, is also neutral.

### ii. **Public Interest Factors**

In addition to the "private interest" considerations discussed above, the Third Circuit has directed courts to take certain "public interest" factors into account when adjudicating a motion to transfer, including: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home, the public policies of the fora, and the familiarity of the trial judge with the applicable state law in diversity cases." <u>Jumara</u>, 55 F.3d at 879-80.

---

[9] The Court notes that, while all parties are now discussing the potential need for third-party fact witnesses in these cases, counsel for Defendant Watson expressly represented to Judge Sleet that both the "compound cases" pending in the District of Delaware and the formulation cases currently pending in this District were "expert case[s]." (Tr. of Jan. 17, 2014 Tel. Conf., Decl. of Thomas S. Fletcher, Ex. 1, ECF No. 20-2, at 10:13-11:3). Plaintiffs' counsel did not challenge that representation.

### A. Enforceability of Judgments

The "enforceability of the judgment" factor is neutral, as a judgment rendered in either this District or the District of Delaware could easily be registered in another district.

### B. Practical Considerations Regarding Trial

"[P]ractical considerations are relevant and warrant transfer if they could make the trial easy, expeditious, or inexpensive. One practical consideration that supports transfer is efficiency." Metro. Life Ins. Co. v. Bank One, N.A., No. 03-1882 (SDW), 2012 U.S. Dist. LEXIS 137119, * (D.N.J. Sept. 25, 2012). In line with that principle, "[t]he Supreme Court has held that allowing lawsuits with similar issues to proceed simultaneously in different districts 'leads to wastefulness of time, energy and money that [section] 1404(a) was designed to prevent.'" COA Network, Inc. v. J2 Global Communs., Inc., No. 09-6505 (WJM), 2010 U.S. Dist. LEXIS 60116, *13-14 (D.N.J. June 17, 2010) (quoting Cont'l Grain Co. v. Barge FBL-585, 364 U.S. 19, 26 (1960)); Platinum Ptnrs. Value Arbitrage Fund, L.P. v. TD Bank, N.A., No. 10-6457 (ES), 2011 U.S. Dist. LEXIS 84689, *20-21 (D.N.J. Aug. 2, 2011) ("Transfer is often meant as a time saving device, for the parties and for the Court. Thus, the transfer of a civil action to another district where similar cases are already pending 'serves not only private interests but also the interests of justice.'") (internal citations omitted). The Court notes that this factor will weigh in favor of transfer as long as the cases are sufficiently similar, and that the legal claims and issues involved need not be identical. See Platinum Ptnrs. Value Arbitrage Fund, L.P., 2011 U.S. Dist. LEXIS 84689 at *21-23 (finding that, where cases already pending in the Southern District of Florida "related generally" to a case pending in this District, but were not so similar that they would necessarily be consolidated upon transfer, that similarity still weighed in favor of transfer).

Plaintiffs stress that their claims in these cases are distinct from those at issue in the Delaware Actions. (Pl. Br., ECF No. 20, at 15-20). The Court recognizes that the two sets of cases are not identical. They are, however, obviously quite similar. Both sets of cases involve the same parties, the same ANDAs and the same products (name brand STAXYN© / generic versions of the drug) and it appears that both will involve testimony from some of the same party witnesses and consideration of at least some of the same party documents regarding the development of both the products at issue and Defendants' ANDAs. In short, the primary distinction between the two sets of cases is that, while the Delaware Actions concern whether Defendants' ANDAs unlawfully infringe upon the Compound Patents (i.e., with regard to the chemical makeup of the compound vardenafil, the active ingredient in STAXYN©), the cases pending in this District are focused on whether the same ANDAs also infringe upon Plaintiff's Formulation Patent (i.e., concerning the specific formulation of STAXYN© as a tablet that delivers vardenafil by disintegrating in a patient's mouth). While adjudication of Plaintiffs' claims regarding the Formulation Patent will necessarily require additional evidence and expert testimony on the formulation-specific issues, there is no valid reason why those issues could (or should) not be tried together with Plaintiff's Compound Patent claims. Indeed, Judge Sleet has already determined that, if Plaintiffs chose to litigate their Formulation Patent claims in the District of Delaware, His Honor would consolidate those cases with the pending Compound Patent cases for a single trial, (Tr. of Jan. 17, 2014 Tel. Conf., Decl. of Thomas S. Fletcher, Ex. 1, ECF No. 20-2, at 20:4-16), and found that including the formulation issues in that trial would not "unduly or really terribly complicate[] the issue for this Court at all." (Id. at 13:19-22).

This example of judicial efficiency is precisely the sort of practical consideration that is vital to a transfer analysis. As noted, Judge Sleet will be conducting a trial regarding the

Compound Patents in April 2015. Any adjudication of claims related to the Formulation Patents could simply be folded into that trial, which will take place regardless of how this Court resolves Defendants' motions to transfer. Indeed, counsel for Defendant Watson represented to Judge Sleet that, in his estimation, including the formulation issues in that trial would not "involve extending the trial beyond the five days that are [already] scheduled." (Id. at 11:4-7). Conversely, were these matters to remain pending in the District of New Jersey, this District would have to conduct one or more separate trials. This second set of trials would not be necessary if the matters were resolved in Delaware. Thus, the Court finds that the burden imposed on this District's judicial resources should these matters remain pending here far exceeds the added burden that the District of Delaware would face by incorporating the Formulation Patent issues into the consolidated trial it has scheduled for April of 2015.

Similarly, transfer would result in less expense for the parties, as issues related to both the Compound Patents and the Formulation Patent could be addressed in a single proceeding. The record reflects that resolving the Formulation Patent issues as part of the Delaware Actions will only modestly extend the scheduled trial for those matters. (Id. at 11:4-7). In any event, the Court finds that it would be less expensive for the parties to conduct a single trial in Delaware, rather than one full trial in Delaware and then at least one additional trial in New Jersey.

Based on the foregoing, the Court finds that this factor weighs very heavily in favor of transfer.

### C. Relative Administrative Difficulty

The Third Circuit also requires that Courts consider the administrative difficulties associated with proceeding in either district, in light of the relative docket congestion of the fora. Jumara, 55 F.3d at 879. Plaintiffs argue that, according to United States Court Management

17

Statistics, the District of Delaware has a higher caseload per judge than the District of New Jersey. (Pl. Br., ECF No. 20, at 20). In response, Defendants argue that, despite these "workload per judge" statistics, "the median length of time to trial in New Jersey is three months more than in Delaware." (Def. Rep. Br., ECF No. 26, at 10). This Court recognizes that both Districts are quite busy. This situation is somewhat unique, however, in that Judge Sleet has already indicated that, if these cases were to come before the District of Delaware, His Honor would consolidate them with the Delaware Actions and conduct a single trial on all of the parties' claims in April of 2015. (Tr. of Jan. 17, 2014 Tel. Conf., Decl. of Thomas S. Fletcher, Ex. 1, ECF No. 20-2, at 14:4-8; 20:14-16).

If the Court were to transfer these matters to the District of Delaware, therefore, any increase to that Court's workload would be incremental, as it must already conduct a trial in April 2015 on the existing Delaware Actions.[10] As noted in Section II(c)(ii)(B), if these matters were transferred, Judge Sleet could (and would) try the Formulation Patent issues as part of that trial. If these matters remain pending in the District of New Jersey, however, this District would

---

[10] The Court does not intend to downplay the significant judicial burden associated with discovery applications and other pretrial matters. Plaintiffs have represented, however, that during the pendency of the "multiple cases involving the Compound Patents in Delaware, the Delaware Court has never ruled on any issues regarding the merits . . . was never presented with any issues of claim construction . . . [and] has not ruled on any discovery disputes . . . [or] held any hearings . . . other than scheduling conferences and the telephonic conference discussed previously." (Pl. Br., ECF No. 20, at 19-20). This is especially significant considering that, until January 2014, when the Delaware Actions were consolidated for a joint trial beginning the following year, Bayer's claims against Watson were scheduled for trial beginning just two months later, in March 2014. (Docket Sheet for Delaware Watson Action, Decl. of Thomas S. Fletcher, Ex. 10, ECF No. 20-5, at 56,). Indeed, in arguing against an adjournment of that trial, Plaintiffs argued that the case was already "ready for trial." (Pl. Br., ECF No. 20, at 7). Inherent in that statement is the representation that discovery was complete and that no pre-trial disputes remained outstanding. Based on Plaintiffs' representations, it therefore appears that the bulk of the judicial workload associated with these cases flows from the trial itself and related proceedings.

have to conduct one or more additional trials. That second set of trials would not be necessary if the matters were resolved in Delaware. The burden imposed on this District's judicial resources should these matters remain pending here thus exceeds the added burden that the District of Delaware would face by incorporating these cases into the consolidated trial it has already scheduled in the Compound Patent matters. The Court therefore finds that this factor weighs in favor of transfer.

### D.   Local Interests / Public Policies of the Fora

Neither this District nor the District of Delaware has a strong "local interest" in these matters. Likewise, no District-specific public policies are implicated here.[11] "Patent infringement lawsuits are matters of national concern that are not 'local controversies,' nor do they implicate the public policies of any one forum." COA Network, Inc. v. J2 Global Communs., Inc., No 09-6505 (WJM), 2010 U.S. Dist. LEXIS 60116, *12 (D.N.J. June 17, 2010); accord ML Design Group, LLC v. Young Mfg. Co., No. 12-5883 (MAS), 2013 U.S. Dist. LEXIS 84393, *10-11 (D.N.J. June 17, 2013); Intellectual Ventures I LLC v. Altera Corp., 842 F. Supp. 2d 744, 760 (D. Del. 2012) ("In patent litigation, the local interest factor is typically neutral, 'because patent issues do not give rise to a local controversy or implicate local interests.'")

---

[11] Plaintiffs argue that this District's relevant "public policy" is embodied in the Local Patent Rules applicable to ANDA cases. (Pl. Br., ECF No. 20, at 21) ("The New Jersey Local Patent Rules thus provide a mechanism to facilitate the orderly resolution of ANDA cases that Delaware does not provide.") Local Rules are standing orders that each District adopts "'to govern the practice and procedure of litigation in that district'", Planned Parenthood v. AG, 297 F.3d 253, 260 (3d Cir. 2002) (quoting Johnson v. Lafayette Fire Fighters Ass'n Local 472, 51 F.3d 726, 729 (7th Cir. 1995)), and are not, in themselves, public policies. In any event, while its local rules may not be identical, the District of Delaware obviously has the same underlying interest in promoting orderly litigation. See, e.g., Bryer v. Jefferson, No. 2013 U.S. Dist. LEXIS 101146, *7 (D. Del. July 8, 2013) (Sleet, J.) ("The court has an interest in the efficient resolution of its cases."); Trader v. Fiat Distributors, Inc., No. 76-249, 1981 U.S. Dist. LEXIS 17802, *12 (D. Del. Jan. 16, 1981) (noting that litigants' violations of local rules jeopardize "orderly and informed court procedures).

(internal citations omitted). While the Court recognizes that, "if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor," In re Hoffmann-La Roche Inc., 587 F.3d 1333, 1338 (Fed. Cir. 2009), the Court has already found that the evidence of record does not establish any such "significant connections." These factors are therefore neutral to the Court's analysis.

### E.   Judges' Familiarity With Applicable State Law

Plaintiffs' claims arise solely under federal law and, therefore, this factor is neutral to the Court's transfer analysis. In re TS Tech United States Corp., 551 F.3d 1315, 1320 (Fed. Cir. 2008) ("'[p]atent claims are governed by federal law,' and as such 'both [courts are] capable of applying patent law to infringement claims.'") (brackets in original) (internal citation omitted).

#### iii.   The Jumara Factors Weigh in Favor of Transfer

With the exception of Plaintiffs' choice of forum, most of the Jumara factors are either neutral or have a fairly minimal impact on the transfer analysis. However, the relevant practical consideration of having a single trial before a jurist who is already somewhat familiar with both the products in question and the relevant issues weighs overwhelmingly in favor of transfer. This Court therefore finds that transfer is appropriate under 28 U.S.C. § 1404(a).

## III.   CONCLUSION

For the foregoing reasons, Defendants' Motions to Transfer, (ECF No. 10 in Civil Action No. 14-1084 and ECF No. 9 in Civil Action No. 14-2065 ), are **GRANTED**, and these matters shall both be transferred to the United States District Court for the District of Delaware.

_____
JOSEPH A. DICKSON, U.S.M.J.

cc:   Hon. Jose L. Linares, U.S.D.J.